UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| INTERNATIONAL GAME TECHNOLOGY, INC.<br><br>    Plaintiff,<br><br> vs.<br><br>FEDERAL INSURANCE COMPANY,<br><br>    Defendant. | 3:13-cv-00026-RCJ-WGC<br><br>ORDER |

  This breach of contract case arises out of Defendant Federal Insurance Company's alleged failure to defend and indemnify. Defendant has moved to dismiss (ECF No. 35). The motion is fully briefed, and Plaintiff has moved for leave to supplement its opposition (ECF No. 53). For the reasons stated herein, the motion for leave to supplement is denied, and the motion to dismiss is granted in part and denied in part. It is denied as to the breach of contract claims and granted as to the remaining claims. Plaintiff is, however, granted leave to amend claims 5 and 6, within seven (7) days of the entry of this Order into the electronic docket, to cure, if possible, the deficiencies delineated below.

I. **FACTS AND PROCEDURAL HISTORY**

  **a. The Insurance Policy**

  Defendant Federal Insurance Company ("Federal" or "Defendant") issued Plaintiff International Game Technology, Inc. ("IGT" or "Plaintiff") an "Executive Protection Portfolio" insurance policy with a policy period from March 31, 2009 to March 31, 2010 (the "Policy"). (FAC ¶ 6, May 22, 2013, ECF No. 34). The Policy included, among other provisions, a Fiduciary

Liability Coverage Section (the "FLCS"), which obligated Federal to "pay, on behalf of [IGT], Loss on account of any fiduciary claim first made against [IGT] during the Policy Period . . . for a Wrongful Act committed, attempted or allegedly committed or attempted before or during the policy period by such Insureds, or by any person for whose Wrongful Acts the Insureds are legally responsible . . . ." (*Id.* ¶ 13 (quoting Policy, ECF No. 35-1, at 85)).[1] The FLCS provides a liability limit of $10 million, subject to an applicable $50,000 retention. (*Id.* ¶ 8). Unlike the other coverage sections in the Policy, the FLCS expressly imposes a duty to defend: "[Federal] shall have the right and duty to defend any Claim covered by this coverage section, even if any of the allegations in such Claim are groundless, false or fraudulent." (*Id.* ¶ 14 (quoting Policy, ECF No. 35-1, at 95)).

However, the FLCS is subject to various limitations and conditions, including a securities exclusion (the "Securities Exclusion"), which provides:

> In consideration of the premium charged, it is agreed that no coverage will be available under this coverage section for Loss on account of any Claim based upon, arising from, or in consequence of:
>
> (a) Any offering, issuance, distribution, sale or purchase of securities;
>
> (b) Any Organization's past, present, or future financial or operational performance, condition, or prospects; or
>
> (c) Any actual or alleged violation of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world (including but not limited to any provision of statutory law or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities).

---

[1] The Policy's capitalized terms are specifically defined elsewhere in the Policy. (*See* FAC ¶¶ 15−17, ECF No. 34).

(Policy, ECF No. 35-1, at 100).

### b. The ERISA Action

IGT provides a retirement plan for its employees (the "Plan") wherein participants make contributions and direct the Plan to purchase investments from IGT's preselected options. (FAC ¶¶ 18–21, ECF No. 34). The IGT stock fund, which invested in IGT stock, was one of the preselected investment options. (*Id.* ¶ 20).

On October 2, 2009, Plan participants (the "ERISA Plaintiffs") filed two putative class action lawsuits, asserting ERISA claims against IGT, the IGT Profit Sharing Plan Committee (the "Committee"), the chairman and individual members of the Committee, and IGT's directors. (*Id.* ¶¶ 22–23). In February, 2010, the Honorable Edward C. Reed consolidated the two lawsuits into a case captioned *Carr v. Int'l Game Tech.*, No. 3:09-cv-00584 (D. Nev.) (the "ERISA Action"). (*See Id.* ¶¶ 24–25). The ERISA Plaintiffs alleged that the defendants breached their fiduciary duties to the Plan and its participants by, among other things, failing to inform or effectively warn Plan participants of the risks of investing in IGT, failing to correct statements or omissions concerning IGT's financial health, failing to ensure that the available investment options were prudent, failing to diversify the Plan's investments, failing to supervise or review the performance of other fiduciaries of the Plan, and protecting their individual interests at the expense of the Plan and its participants. (*See id.* ¶¶ 27–34).[2]

---

[2] In paragraphs 29–36 of the FAC, IGT provides specific quotations from the consolidated complaint, demonstrating that the underlying ERISA Action concerned breaches of fiduciary duties arising from the Plan's investment in IGT stock and/or alleged failures to provide information or correct statements concerning IGT's financial health. The Court has only summarized those quotations here.

On March 16, 2011,[3] Judge Reed denied the ERISA Plaintiffs' motion for class certification and dismissed several of their claims. *See Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1101 (D. Nev. 2011). The action was later transferred to this Court, and the parties ultimately reached a settlement wherein IGT agreed to pay compensation in the amount of $500,000 and up to $25,000 for administrative costs. (*See* ERISA Action, 3:09-cv-00584-RCJ-WGC, ECF No. 178, at 3–7). This Court entered final judgment on June 26, 2013. (*Id.*).

**c.  The Insurance Claim**

Shortly after the ERISA Plaintiffs initiated the ERISA Action, IGT notified Federal and tendered coverage under the FLCS. (FAC ¶ 38, ECF No. 34). On November 18, 2009, Federal disclaimed coverage by letter and, according to Plaintiff, "failed to acknowledge its duty to defend." (*Id.* ¶ 39).[4] Plaintiff did not attach a copy of Federal's letter to the FAC, but Federal has attached a copy to the instant motion to dismiss. (*See* Prentiss Letter, ECF No. 35-2).

In a letter dated October 23, 2012, IGT updated Federal on the status of the ERISA Action and the prospective settlement, asserted that Federal had breached its duty to defend and was therefore estopped from raising coverage defenses, and demanded that Federal withdraw its denial of coverage, reimburse [IGT] for its losses, and fund the prospective settlement. (FAC ¶¶

---

[3] Plaintiff alleges a date of March 16, 2012, but Judge Reed's Order shows a date of March 16, 2011. Therefore, the Court will assume that Plaintiff has merely made a typographical error and proceed accordingly.

[4] In its opposition to the motion to dismiss, IGT claims that paragraph 39 of the FAC alleges that Federal denied coverage "without analyzing whether the allegations made in the ERISA Action were potentially covered by the policy." (*See* ECF No. 44, at 6 (citing FAC ¶ 39, ECF No. 34)). This is unquestionably false. (*See* Prentiss Letter, ECF No. 35-2). Furthermore, no such allegation appears in paragraph 39 or anywhere else in the FAC. Therefore, the Court will not consider it for purposes of the instant motion. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (New allegations raised for the first time in an opposition to a motion to dismiss are "irrelevant for Rule 12(b)(6) purposes.").

4

40–41, ECF No. 34). On November 6, 2012, after Federal failed to respond, IGT sent another letter, advising Federal that it would move forward with its attempt to settle the ERISA Action and hold Federal responsible for all of its losses. (*Id.* ¶ 41). Federal responded, stating that it would stand by the disclaimer of coverage set forth in its earlier letter. (*Id.* ¶ 42).

Weeks later, IGT commenced the instant lawsuit and presently asserts six causes of action: (1) Breach of Contract—Duty to Defend; (2) Declaratory Judgment—Estoppel; (3) Anticipatory Breach of Contract—Duty to Indemnify; (4) Declaratory Judgment; (5) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; and (6) Tortious Breach of the Implied Covenant of Goof Faith and Fair Dealing. (*Id.* ¶¶ 54–92). On January 17, 2013, Federal removed the action to this Court and now moves to dismiss under Federal Rule 12(b)(6). (*See* ECF No. 35). IGT has opposed the motion and moved for leave to supplement its opposition with materials that are neither attached to nor discussed in the FAC. (ECF No. 53). The Court now considers the pending motions.

## II.  LEGAL STANDARDS

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1150 n.2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). In general, the court should look only to the contents of the complaint during its review of a Rule 12(b)(6) motion to dismiss. However, the court may consider documents attached to the complaint or referred to in the

complaint whose authenticity no party questions. *Id.*; *see Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).

The analysis and purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (quotations omitted). To avoid a Rule 12(b)(6) dismissal, a complaint does not need detailed factual allegations;  rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007));  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (stating that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). Even though a complaint does not need "detailed factual allegations" to pass Rule 12(b)(6) muster, the factual allegations "must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1966).

If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave to amend. The court should "freely give" leave to amend when there is no "undue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Generally, leave to amend is denied only when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

## III.  ANALYSIS

### a. Motion to Supplement and Consideration of Additional Documents

Plaintiff moves to supplement its opposition with correspondence and other materials that allegedly contradict Federal's position in the instant matter. (ECF No. 53). Prior to Federal's motion to dismiss, however, Plaintiff neither referred to these documents nor alleged the facts they describe. Indeed, the FAC is entirely silent with respect to these additional materials.

As a threshold matter, the Court will not convert the pending motion to dismiss into a motion for summary judgment. Federal is not seeking summary judgment, (*See* Opp'n to Mot. to Supplement, ECF No. 55, at 2), and the Court finds that piecemeal consideration of the evidence, at this premature stage, would be imprudent.

When ruling on a Rule 12(b)(6) motion to dismiss, if a court considers evidence outside the pleadings, it must normally convert the motion into a Rule 56 motion for summary judgment and give the nonmoving party an opportunity to respond. *See* Fed. R. Civ. P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir. 1998). However, under the Ninth Circuit's "incorporation by reference" doctrine, a court may consider documents not attached to the

complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Therefore, for purposes of the instant motion, the Court will consider only: (1) allegations contained in the complaint; (2) documents attached to the complaint; (3) documents incorporated into the complaint by extensive reference; and (4) documents forming the basis of the claims at issue. Accordingly, the Court limits its consideration to the FAC itself, (ECF No. 34); the Policy, (ECF No. 35-1); and Federal's letter disclaiming coverage, (Prentiss Letter, ECF No. 35-2), which is referred to extensively in the FAC and forms the basis of IGT's contractual claims, (*See* FAC, ¶¶ 39, 42, ECF No. 34). No other materials will be considered.

The Court recognizes that the documents Plaintiff now seeks to offer would provide additional factual content forming the bases of the claims at issue. Indeed, these new facts could alter the Court's analysis of the pending motion to dismiss. However, a deficient pleading cannot be cured by new allegations raised in a plaintiff's opposition to a motion to dismiss. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir. 1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993)); *see also 2 Moore's Federal Practice*, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."). Therefore, the Court cannot consider the supplemental documents, and the motion for leave to supplement is denied. Consistent with the remainder of this Order, however, Plaintiff is free to amend its complaint to allege the additional facts these materials describe.

### b.  Breach of Contract Claims (Claims 1 and 3)

The Court denies Federal's motion as to the breach of contract claims (claims 1 and 3). A plaintiff in a breach of contract action must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920–21 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (1865)).

Arguing that the ERISA Action falls squarely and entirely within the Securities Exclusion, Federal contends that IGT cannot plausibly allege breach of contract. (*See* Mot. to Dismiss, ECF No. 35, at 13). This, however, is less than clear. In fact, Federal has merely assumed what it ultimately asks the Court to conclude: namely, that none of the claims asserted in the ERISA Action gave rise to the duty to defend or the duty to indemnify.

Under Nevada law, however, the language of an insurance policy is broadly interpreted in order to afford "the greatest possible coverage to the insured." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004). An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation." *Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1057 (Nev. 2000). It follows that "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Id.* The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations of coverage as drafted. *Bidart v. American Title*, 734 P.2d 732, 734 (Nev. 1987). Furthermore, "[t]he duty to defend is broader than the duty to indemnify. In other words, as a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification

ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620-21 (Nev. 2011) (internal citations and quotation marks omitted).

Applying these standards, the Court finds that Plaintiff has adequately pled that the ERISA Plaintiffs alleged conduct outside the scope of the Securities Exclusion. For example, the ERISA Plaintiffs alleged, among other things, that the defendants "failed to adequately review the performance of the other fiduciaries of the Plan." (FAC ¶ 29, ECF No. 34). Of course, it is not immediately clear that such allegations fall outside the scope of the narrowly construed Securities Exclusion, but this is the ultimate issue in this case, and its very existence demonstrates that Plaintiff has stated a plausible claim for breach of the duty to indemnify. Moreover, because the duty to defend attaches even where there is only a potential for indemnification, Plaintiff's allegations, at minimum, state a plausible claim for breach of the duty to defend. This, of course, is not to say that IGT will ultimately prevail on these claims, but merely that it has adequately pled them, and that they therefore survive Federal's motion to dismiss.

### c. Declaratory Judgment Claims (Claims 2 and 4)

The Court grants Federal's motion as to both declaratory judgment claims (claims 2 and 4). As an initial matter, "claims" for injunctive or declaratory relief are not proper causes of action. "Declaratory relief, like injunctive relief, is a remedy, not an underlying substantive claim." *Daisy Trust v. JPMorgan Chase*, No. 2:13-cv-00966-RCJ-VCF, 2013 WL 6528467, at *4 (D. Nev. Dec. 11, 2013) (citing *In re Wal-Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007)); *cf. Jensen v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("An injunction is a remedy, not a separate claim or cause of action.

A pleading can . . . request injunctive relief in connection with a substantive claim, but a separately pled claim or cause of action for injunctive relief is inappropriate.").

In the instant case, Claim 4, which is titled "Count IV Declaratory Judgment," merely repeats the allegations supporting Plaintiff's first three claims. It is therefore duplicative and dismissed with prejudice. Claim 2 apparently seeks declaratory judgment under a theory of equitable estoppel. This claim is confusing and appears to lack any basis in the law. As the Court understands it, Plaintiff is attempting to claim that Federal is estopped from raising any defenses to coverage in this action because of its failure to defend the underlying ERISA Action. This claim is defective for at least three reasons: First, Plaintiff requests no declaratory relief in its Prayer for Relief. Second, Plaintiff's entire estoppel theory appears to be premised on the assertion that Federal declined coverage without analyzing the claims and without reserving its right to assert additional defenses. This assertion is unquestionably false and obviously misleading. (*Compare, e.g.*, Pl's Opp'n , ECF No. 44, at 21 ( "Federal was given notice of the Claim but took no action apart from merely citing an exclusion in [*sic*] policy, and made no effort to determine whether any allegation in the underlying ERISA Action did or did not indicate a potential for coverage.") *with* Prentiss Letter, ECF No. 35-2 (describing, in great detail, through six pages of text, Federal's analysis of the allegations made in the ERISA Action and Federal's contractual basis, under the Securities Exclusion, for disclaiming coverage, and reserving Federal's right to assert additional defenses )). Plaintiff is strongly cautioned against making similar misrepresentations in the future.

Third, to the extent that Plaintiff is attempting to assert common law equitable estoppel, the claim fails as a matter of law. In Nevada, the elements of equitable estoppel are as follows:

> (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true state of facts; and (4) he must have relied to his detriment on the conduct of the party to be estopped.

*NGA #2 Ltd. Liab. Co. v. Rains*, 946 P.2d 163, 169 (Nev.1997). Here, Plaintiff has failed to allege that Federal was "apprised of the true facts," or, in other words, that Federal knew that the ERISA Action triggered its duty to defend. Likewise, because the Court will not consider Plaintiff's false allegation that it lacked notice of the defenses now asserted, Plaintiff has failed to plead that it was "ignorant of the true state of facts." Furthermore, Federal's November 18, 2009 declination letter, to which Plaintiff refers in the FAC, (*See* FAC, ¶¶ 39, 42, ECF No. 34), not only describes the defenses Federal now asserts, it also expressly reserves the right to assert any additional defenses available under the Policy or applicable law. (Prentiss Letter, ECF No. 35-2, at 7). Finally, "Plaintiff cannot be said to have detrimentally relied on Defendant['s] bases for denying coverage. Defendant[] ha[s] already denied coverage and Plaintiff has relied on Defendant['s] denial. Should Defendant[] assert a new basis for declination of coverage, Plaintiff is still left in the same position, namely with no coverage." *Gary G. Day Constr. Co., Inc. v. Clarendon Am. Ins. Co.*, 459 F. Supp. 2d 1039, 1050 (D. Nev. 2006). Accordingly, an amendment to this claim would be futile, and it is therefore dismissed with prejudice.

### d. Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 5)

Claim 5 is dismissed with leave to amend. To state a claim for contractual breach of the implied covenant of good faith and fair dealing, Plaintiff must allege (1) that Defendant literally complied with the express terms of the contract; and (2) that Defendant nonetheless violated the

12

contract's "intention and spirit." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922–23 & n.6 (Nev. 1991). Here, Plaintiff alleges an outright breach of contract. (*See* FAC, ECF No. 9, at ¶15). Because Plaintiff affirmatively alleges only that Federal failed to comply with terms of the contract, no claim for breach of the implied covenant of good faith and fair dealing lies. *See Hilton Hotels*, 808 P.2d at 922–23 (Nev. 1991); *see also Kennedy v. Carriage Cemetery Serves., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010) (holding that if the pleadings merely allege facts establishing a violation of the express terms of a contract, a claim for beach of the contractual covenant of good faith is duplicative of a breach of contract claim); *Romm v. Hartford Ins. Co. of the Midwest*, No. 2:12-CV-01412-RCJ-PAL, 2012 WL 4747137, at *4  (D. Nev. Oct. 2, 2012) (dismissing, with leave to amend, a claim for beach of the implied covenant of good faith and fair dealing because the insured alleged an outright breach and not that the insurer complied with the literal terms of the policy while deliberately depriving the insured of the benefits thereof). Although a party may plead alternative, inconsistent theories, Plaintiff has plainly failed to allege, as an alternative theory that Federal complied with the literal terms of the policy while deliberately depriving Plaintiff of its benefits. Claim 5 is therefore dismissed with leave to amend.

   **e.   Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 6)**

   Claim 6 is dismissed with leave to amend. Under Nevada law, an action in tort for breach of the covenant of good faith and fair dealing arises where there is a special relationship between the parties to a contract, such as the relationship between an insurer and an insured. *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006). An insurer breaches the duty of

good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U. S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). An insurer is without proper cause to deny a claim when it has an 'actual or implied' awareness that no reasonable basis exist [*sic*] to deny the claim." *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994)(citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986). The insurer has not breached the covenant of good faith and fair dealing if it incorrectly denies policy coverage, provided the insurer has a reasonable basis for doing so. *Id.*

With respect to the claim for tortious breach, Plaintiff's allegations are either conclusory, contradicted by reference to the declination letter, or both. Relevant to this claim, Plaintiff alleges only that Federal: (1) "fail[ed] to acknowledge its duty to defend IGT under the terms of the [FLCS]"; (2) "fail[ed] to address, let alone determine, whether any of the causes of action asserted by the plaintiffs in the ERISA Litigation had at least a potential for coverage"; and (3) "promptly abandon[ed] its Insureds without so much as acknowledging or analyzing whether Federal had a duty to defend." (FAC ¶ 90, ECF No. 34). The first allegation is conclusory because it assumes, without any factual support, the threshold element of the claim: that Federal lacked a reasonable basis for denying the claim. The second and third allegations cannot be reconciled with the plain text of declination letter and are therefore contradicted by a document that Plaintiff has incorporated by reference. Moreover, they lack factual content from which the Court could infer that Federal knew or should have known that it lacked a reasonable basis for the denial.

Not surprisingly, Plaintiff attempts to save its deficient FAC by misstating the pleading requirements established in *Twombly* and *Iqbal*. While Plaintiff correctly notes that it need not plead the relevant facts in great detail, (Opp'n, ECF No. 44, at 7), it ignores the central premise of the modern pleading standard, which requires the operative complaint to include facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. Indeed, Plaintiff is required not only to provide notice of the claim asserted, but also "the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Applying the correct legal standard, it is clear that Plaintiff has failed to adequately allege that Federal had 'actual or implied' awareness that it lacked a reasonable basis for denying the claim. Claim 6 is therefore dismissed with leave to amend.

///

///

///

# CONCLUSION

IT IS HEREBY ORDERED that Defendant's motion to dismiss (ECF No. 35) is GRANTED in part and DENIED in part. It is DENIED as to claims 1 and 3 and GRANTED as to the remaining claims.

IT IS FURTHER ORDERED that Plaintiff is granted leave amend claims 5 and 6, within seven (7) days of the entry of this Order into the electronic docket, to cure, if possible, the deficiencies delineated herein.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to supplement (ECF No. 53) is DENIED.

IT IS SO ORDERED.

Dated: February 13, 2014

_____
ROBERT C. JONES
United States District Judge