UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

INTERNATIONAL GAME TECHNOLOGY, INC.

        Plaintiff,

vs.

FEDERAL INSURANCE COMPANY,

        Defendant.

3:13-cv-00026-RCJ-WGC

**ORDER**

This breach of contract case arises out of Defendant Federal Insurance Company's alleged failure to defend and indemnify. Defendant now moves for summary judgment, (ECF No. 71). Defendant has also moved to dismiss Plaintiff's fifth cause of action (entitled "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing"), (ECF No. 83). For the reasons stated herein, the motion for summary judgment is granted in part and denied in part. The parties have now stipulated to dismiss Plaintiff's fifth cause of action, (ECF No. 85), and the pending motion to dismiss it is therefore denied as moot.

**I.    FACTS AND PROCEDURAL HISTORY**

    **a.  The Insurance Policy**

Defendant Federal Insurance Company ("Federal" or "Defendant") issued Plaintiff International Game Technology, Inc. ("IGT" or "Plaintiff") an "Executive Protection Portfolio" insurance policy with a policy period from March 31, 2009 to March 31, 2010 (the "Policy"). (First Am. Compl. ("FAC") ¶ 6, May 22, 2013, ECF No. 34). The Policy included, among other provisions, a Fiduciary Liability Coverage Section (the "FLCS"), which obligated Federal to

1

"pay, on behalf of [IGT], Loss on account of any fiduciary claim first made against [IGT] during the Policy Period . . . for a Wrongful Act committed, attempted or allegedly committed or attempted before or during the policy period by such Insureds, or by any person for whose Wrongful Acts the Insureds are legally responsible . . . ." (*Id.* ¶ 13 (quoting Policy, ECF No. 35-1, at 85)). The FLCS provides a liability limit of $10 million, subject to an applicable $50,000 retention. (*Id.* ¶ 8). Unlike the other coverage sections in the Policy, the FLCS expressly imposes a duty to defend: "[Federal] shall have the right and duty to defend any Claim covered by this coverage section, even if any of the allegations in such Claim are groundless, false or fraudulent." (*Id.* ¶ 14 (quoting Policy, ECF No. 35-1, at 95)).

However, the FLCS is subject to various limitations and conditions, including a securities exclusion (the "Securities Exclusion" or "Exclusion"), which provides:

> In consideration of the premium charged, it is agreed that no coverage will be available under this coverage section for Loss on account of any Claim based upon, arising from, or in consequence of:
>
> (a) Any offering, issuance, distribution, sale or purchase of securities;
>
> (b) Any Organization's past, present, or future financial or operational performance, condition, or prospects; or
>
> (c) Any actual or alleged violation of the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world (including but not limited to any provision of statutory law or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities).

(Policy, ECF No. 35-1, at 100).

2

### b. The ERISA Action

IGT provides a retirement plan for its employees (the "Plan") wherein participants make contributions and direct the Plan to purchase investments from IGT's preselected options. (FAC ¶¶ 18–21, ECF No. 34). The IGT stock fund, which invested in IGT stock, was one of the preselected investment options. (*Id.* ¶ 20).

On October 2, 2009, Plan participants (the "ERISA Plaintiffs") filed two putative class action lawsuits, asserting ERISA claims against IGT, the IGT Profit Sharing Plan Committee (the "Committee"), the chairman and individual members of the Committee, and IGT's directors. (*Id.* ¶¶ 22–23). In February, 2010, the Honorable Edward C. Reed consolidated the two lawsuits into a case captioned *Carr v. Int'l Game Tech.*, No. 3:09-cv-00584 (D. Nev.) (the "ERISA Action"). (*See Id.* ¶¶ 24–25). The ERISA Plaintiffs alleged that the defendants breached their fiduciary duties to the Plan and its participants by, among other things, failing to inform or effectively warn Plan participants of the risks of investing in IGT, failing to correct statements or omissions concerning IGT's financial health, failing to ensure that the available investment options were prudent, failing to diversify the Plan's investments, failing to supervise or review the performance of other fiduciaries of the Plan, and protecting their individual interests at the expense of the Plan and its participants. (*See id.* ¶¶ 27–34).[1]

On March 16, 2011, Judge Reed denied the ERISA Plaintiffs' motion for class certification and dismissed several of their claims. *See Carr v. Int'l Game Tech.*, 770 F. Supp. 2d

---

[1] In paragraphs 29–36 of the FAC, IGT provides specific quotations from the consolidated complaint, demonstrating that the underlying ERISA Action concerned breaches of fiduciary duties arising from the Plan's investment in IGT stock and/or alleged failures to provide information or correct statements concerning IGT's financial health. The Court has only summarized those quotations here.

1080, 1101 (D. Nev. 2011). The action was later transferred to this Court, and the parties ultimately reached a settlement wherein IGT agreed to pay compensation in the amount of $500,000 and up to $25,000 for administrative costs. (*See* ERISA Action, 3:09-cv-00584-RCJ-WGC, ECF No. 178, at 3–7). This Court entered final judgment on June 26, 2013. (*Id.*).

    **c. The Insurance Claim**

Shortly after the ERISA Plaintiffs initiated the ERISA Action, IGT notified Federal and tendered coverage under the FLCS. (FAC ¶ 38, ECF No. 34). Citing the Securities Exclusion, Federal disclaimed coverage in a detailed letter on November 18, 2009. (Prentiss Letter, ECF No. 35-2, at 6). In a letter dated October 23, 2012, IGT updated Federal on the status of the ERISA Action and the prospective settlement, asserted that Federal had breached its duty to defend and was therefore estopped from raising coverage defenses, and demanded that Federal withdraw its denial of coverage, reimburse IGT for its losses, and fund the prospective settlement. (FAC ¶¶ 40–41, ECF No. 34). On November 6, 2012, after Federal failed to respond, IGT sent another letter, advising Federal that it would move forward with its attempt to settle the ERISA Action and hold Federal responsible for all of its losses. (*Id.* ¶ 41). Federal responded, stating that it would stand by the disclaimer of coverage set forth in its earlier letter. (*Id.* ¶ 42).

Weeks later, IGT commenced the instant lawsuit, initially asserting six causes of action: (1) Breach of Contract—Duty to Defend; (2) Declaratory Judgment—Estoppel; (3) Anticipatory Breach of Contract—Duty to Indemnify; (4) Declaratory Judgment; (5) Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing; and (6) Tortious Breach of the Implied Covenant of Goof Faith and Fair Dealing. (*Id.* ¶¶ 54–92). On January 17, 2013, Federal removed the action to this Court and later moved to dismiss the FAC. (*See* ECF No. 35). On February 13,

2014, this Court entered an order (the "prior order") granting in part and denying in part Federal's motion to dismiss. (ECF No. 79). Specifically, the Court: (1) denied the motion as to claim 1 (Breach of the Duty to Defend) and claim 3 (Breach of the Duty to Indemnify) (collectively, the "breach of contract claims"); (2) dismissed, with prejudice, claim 2 (Estoppel) and claim 4 (Declaratory Judgment); and (3) dismissed, with leave to amend, claim 5 (Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing) and claim 6 (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing). (*Id.*).

On February 20, 2014, IGT filed its second amended complaint ("SAC"), asserting its surviving breach of contract claims (claims 1 and 3) and amended versions of its claims for contractual and tortious breach of the implied covenant of good faith and fair dealing (claims 5 and 6). (SAC, ECF No. 82, at 21–29).[2] On March 5, 2014, Federal filed the pending motion to dismiss claim 5 of the SAC. (ECF No. 83). However, on March 10, 2014, the parties stipulated to dismiss claim 5 with prejudice, (ECF No. 85), thereby mooting the motion to dismiss. Accordingly, IGT has only three remaining causes of action: two claims for breach of contract (claims 1 and 3) and one claim for tortious breach of the implied covenant of good faith and fair dealing (claim 6). Federal now moves for summary judgment on each of these remaining claims. (Mot. Summ. J., ECF No. 71). IGT has filed an opposition, (Am. Opp'n Mot. Summ. J., ECF No. 91), and Federal has replied, (ECF No. 93). The Court now considers Federal's motion.

## II.   LEGAL STANDARD

In reviewing a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.

---

[2] In the SAC, IGT acknowledges that the Court dismissed claims 2 and 4 with prejudice, but it continues to list them as placeholders.

1996). Pursuant to Federal Rule of Civil Procedure 56, a court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are "facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of identifying the portions of the pleadings and evidence that the party believes to demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). Once the moving party has properly supported the motion, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Where the record taken as a

whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587.

## III. ANALYSIS

Federal contends that it is entitled to summary judgment on all three of IGT's remaining claims. The Court disagrees in part. Specifically, the Court concludes that Federal is not entitled to summary judgment on the breach of contract claims (claims 1 and 3) but is entitled to summary judgment as to the claim for tortious breach of the implied covenant of good faith and fair dealing (claim 6). Therefore, only the breach of contract claims survive this order.

### a. Breach of Contract Claims (Claims 1 and 3)

In its prior order, the Court declined to dismiss IGT's breach of contract claims, reasoning:

> A plaintiff in a breach of contract action must "show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 920–21 (D. Nev. 2006) (*citing Richardson v. Jones*, 1 Nev. 405, 405 (1865)).
>
> Arguing that the ERISA Action falls squarely and entirely within the Securities Exclusion, Federal contends that IGT cannot plausibly allege breach of contract. (*See* Mot. to Dismiss, ECF No. 35, at 13). This, however, is less than clear. In fact, Federal has merely assumed what it ultimately asks the Court to conclude: namely, that none of the claims asserted in the ERISA Action gave rise to the duty to defend or the duty to indemnify.
>
> Under Nevada law, however, the language of an insurance policy is broadly interpreted in order to afford "the greatest possible coverage to the insured." *United Nat'l Ins. Co. v. Frontier Ins. Co., Inc.*, 99 P.3d 1153, 1156 (Nev. 2004). An insurance policy may restrict coverage only if the policy's language "clearly and distinctly communicates to the insured the nature of the limitation." *Vitale v. Jefferson Ins. Co.*, 5 P.3d 1054, 1057 (Nev. 2000). It follows that "any ambiguity or uncertainty in an insurance policy must be construed against the insurer and in favor of the insured." *Id.* The question of whether an insurance policy is ambiguous turns on whether it creates reasonable expectations

7

>of coverage as drafted. *Bidart v. American Title*, 734 P.2d 732, 734 (Nev. 1987). Furthermore, "[t]he duty to defend is broader than the duty to indemnify. In other words, as a general rule, an insurer's duty to defend is triggered whenever the potential for indemnification arises, and it continues until this potential for indemnification ceases." *Benchmark Ins. Co. v. Sparks*, 254 P.3d 617, 620-21 (Nev. 2011) (internal citations and quotation marks omitted).
>
>Applying these standards, the Court finds that Plaintiff has adequately pled that the ERISA Plaintiffs alleged conduct outside the scope of the Securities Exclusion. For example, the ERISA Plaintiffs alleged, among other things, that the defendants "failed to adequately review the performance of the other fiduciaries of the Plan." (FAC ¶ 29, ECF No. 34). Of course, it is not immediately clear that such allegations fall outside the scope of the narrowly construed Securities Exclusion, but this is the ultimate issue in this case, and its very existence demonstrates that Plaintiff has stated a plausible claim for breach of the duty to indemnify.

(Order, ECF No. 79, at 9–10).

Federal's arguments in the pending motion are similar to those raised in the earlier motion to dismiss, and its position can be reduced to the following: In the context of an exclusionary clause, the Ninth Circuit would interpret the phrase "arising out of" to mean "originating from, having its origin in, growing out of, or flowing from or in short, incident to, or having connection with." (Mot. Summ. J., ECF No. 71, at 21–22 (quoting *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960) (internal quotation marks omitted) ("'Arising out of' are words of much broader significance than 'caused by.'"))). Under this and other related definitions, "IGT's assertion that two of the claims in the ERISA [Action] are outside the scope of the [Securities Exclusion] is . . . unsupportable." (Reply, ECF No. 93, at 18). Specifically, Federal contends, "[w]hile IGT initially assert[ed] that the [ERISA Plaintiffs'] allegation . . . that the fiduciaries suffered from conflicts of interests is outside the scope of the

8

[Securities Exclusion], IGT [now] concedes that '[t]he [ERISA Plaintiffs] alleged that the fiduciaries received compensation in the form of *company stock* and thus were subjected to improper influence by the company and unable to function in the best interest of Plan participants.'" (*Id.* (quoting Am. Opp'n Mot. Summ. J., ECF No. 91, at 23–24)). Thus, according to Federal, "IGT effectively admits that the conflict of interest claim is based upon, arises from, or is in consequence of the offering, issuance, distribution, sale or purchase of IGT stock," and the Securities Exclusion therefore applies. (*Id.*).

Likewise, Federal continues, the ERISA Plaintiffs' failure to monitor claim is subject to the Securities Exclusion, because it is based on: (1) the monitoring defendants' alleged failure to "ensure that the monitored fiduciaries appreciated IGT's true financial condition and [existing] threats to company earnings[,] which made IGT stock an imprudent investment and an unjustified risk"; and (2) the monitoring defendants' alleged failure to disclose accurate information about IGT's known financial condition and practices. (*Id.* at 18–19). According to Federal, these allegations demonstrate that the claims asserted against the monitoring defendants arise out of "the offering, issuance, distribution, sale or purchase of IGT stock and/or IGT's past, present or future financial or operational performance, condition or prospects," such that the Securities Exclusion precludes coverage for this aspect of the ERISA Action. (*Id.* at 19). The Court disagrees, concluding that the Securities Exclusion cannot be construed so broadly.

In diversity actions, federal courts apply substantive state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Nitco Holding Corp. v. Boujikian*, 491 F.3d 1086, 1089 (9th Cir. 2007). Under Nevada law, "[a]n insurance policy is a contract that must be

enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). Where, as here, the facts are not in dispute, contract interpretation is a question of law. *Grand Hotel Gift Shop v. Granite State Ins. Co.*, 839 P.2d 599, 602 (Nev. 1992).

The language of an insurance policy must be viewed "from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993). If an insurance policy is unambiguous, a court must interpret it according to the plain meaning of its terms. *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (Nev. 2011). "An insurance policy is considered ambiguous if 'it creates [multiple] reasonable expectations of coverage as drafted.'" *Century Sur. Co. v. Casino W., Inc.*, No. 60622, ––– Nev. –––, ––– P.3d –––, 2014 WL 2396085, at *2 (Nev. May 29, 2014) (quoting *Powell*, 252 P.3d at 672). "A seemingly clear policy can be rendered ambiguous when applying the policy to the facts leads to multiple reasonable interpretations." *Id.* (citing *Rubin v. State Farm Mut. Auto. Ins. Co.*, 43 P.3d 1018, 1021 (Nev. 2002)). Courts must "interpret ambiguities in an insurance contract against the drafter, which is typically the insurer." *Id.* (citing *Powell*, 252 P.3d at 672).

"Clauses providing coverage are broadly interpreted 'so as to afford the greatest possible coverage to the insured, [and] clauses excluding coverage are interpreted narrowly against the insurer.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984)). "Any exclusion must be narrowly tailored so that it 'clearly and distinctly communicates to the insured the nature of the limitation, and

specifically delineates what is and is not covered.'" *Id.* (quoting *Griffin v. Old Republic Ins. Co.*, 133 P.3d 251, 255 (Nev. 2006)).

The Nevada Supreme Court has recently established a three-part test to determine whether coverage is precluded under a policy exclusion provision:

> To preclude coverage under an insurance policy's exclusion provision, an insurer must (1) draft the exclusion in obvious and unambiguous language, (2) demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision, and (3) establish that the exclusion plainly applies to the particular case before the court.

*Id.* (quoting *Powell*, 252 P.3d at 674) (internal quotation marks omitted). Federal fails to satisfy this standard.

Viewing the Securities Exclusion "from the perspective of one not trained in law or in insurance, with the terms . . . in their plain, ordinary and popular sense," *Siggelkow*, 846 P.2d at 304, the Court is simply unable to conclude that it unambiguously applies to the present facts such that an "interpretation excluding coverage is the only reasonable interpretation," *Powell*, 252 P.3d at 674. While seemingly clear when read in a contextual vacuum, the Exclusion is subject to multiple interpretations when applied against the ERISA Action. When viewed as a whole, it can, of course, be reasonably read to exclude coverage for claims arising out of IGT's role in purchasing, selling, and otherwise publically transacting in its own securities as a pure matter of corporate finance. In the ERISA Action, however, the plaintiffs challenged IGT's performance in a different role—as manager of employee retirement accounts. The Exclusion includes no language concerning this secondary, somewhat unrelated fiduciary role. Therefore, it would not be unreasonable for the lay reader to interpret it as inapplicable to at least some of the claims

asserted in the ERISA Action. Indeed, this interpretation seems intuitive, even to the Court, because nothing in the policy suggests, let alone plainly evidences, that the parties intended the Exclusion to apply against the management of IGT securities in the ERISA context. Moreover, as indicated in the prior order, certain claims in the ERISA Action appear to have only incidentally involved IGT securities. (Order, ECF No. 79, at 10). The Exclusion certainly could not preclude coverage for these claims had they involved investment in different securities. Therefore, the critical question is whether the Exclusion is "narrowly tailored so that it clearly and distinctly communicates," that an opposite result is required where, as here, the same claims incidentally involve the management of IGT securities. *See Century Sur. Co.*, 2014 WL 2396085, at *2 (internal quotation marks omitted). The Court finds that it does not. If Federal actually intended to exclude coverage for fiduciary claims in the ERISA context, "it should have drafted a more explicit exclusion." *Powell*, 252 P.3d at 674.

  Of course, as Federal contends, it cannot be disputed that the Exclusion *could be* broadly read to reach the entire ERISA Action. However, under controlling Nevada law, it *must be* read narrowly, if possible, against the insurer. *Century Sur. Co.*, 2014 WL 2396085, at *2. Here, it is at least possible, if not intuitive, to read the Exclusion as inapplicable to IGT in its role as manager of employee 401k accounts. Thus, the Court must conclude that Federal has failed to "demonstrate that the interpretation excluding coverage is the only reasonable interpretation of the exclusionary provision." *Powell*, 252 P.3d at 674. Accordingly, Federal has failed, under *Powell*'s second prong, to demonstrate that the Exclusion precludes coverage for the entire ERISA Action.

Therefore, with respect to IGT's breach of contract claims, the instant motion for summary judgment is denied.

### b.  Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing (Claim 6)

Federal is entitled to summary judgment on IGT's sixth claim for relief. Under Nevada law, an action in tort for breach of the covenant of good faith and fair dealing arises where there is a special relationship between the parties to a contract, such as the relationship between an insurer and an insured. *Ins. Co. of the West v. Gibson Tile Co., Inc.*, 134 P.3d 698, 702 (Nev. 2006). An insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U. S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975). An insurer is without proper cause to deny a claim when it has an 'actual or implied' awareness that no reasonable basis exist [*sic*] to deny the claim." *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994)(citing *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354 (Nev. 1986)). The insurer has not breached the covenant of good faith and fair dealing if it incorrectly denies policy coverage, provided that it has a reasonable basis for doing so. *Id.*

Federal cites record evidence demonstrating that even if it incorrectly denied coverage, it had a reasonable basis for doing so. Specifically, Federal demonstrates that after a careful analysis of the ERISA Action and relevant Policy provisions, it reasonably concluded, and timely communicated, that the Exclusion precluded coverage. (*See* Reply, ECF No. 93, at 4–14) (citing and quoting record evidence throughout)). IGT cannot, and in fact does not, seriously maintain that it was unreasonable for Federal to conclude that the Exclusion applies. Indeed, it

may yet apply against coverage for some aspects of the ERISA Action. Moreover, even if ultimately incorrect, such legal conclusions, where reasonably supported, do not support a finding that an insurer lacked a reasonable basis for denying coverage.

IGT's attempt to fabricate a genuine factual dispute on this issue is unpersuasive, irrelevant, and troubling: It is largely based on a misrepresentation of the record. (*See* Reply, ECF No. 93, at 4–14 (containing an exhaustive analysis of IGT's various misrepresentations)). According to IGT's "summary" of the relevant record evidence, Federal: (1) initially identified the potential applicability of the Securities Exclusion but "concluded that the ERISA claims triggered Federal's duty to defend," (Am. Opp'n, ECF No. 91, at 27); (2) unambiguously communicated this conclusion to IGT, who relied on it, (*id.*); (3) consistently communicated both that it had a duty to defend IGT and that the ERISA Action potentially triggered coverage under the FLCS, (*id.* at 29); (4) sent an email "expressing [its] 'decision that Morgan Lewis be assigned as ERISA defense counsel' because 'Federal has the right and duty to defend any Claim potentially covered by the [FLCS],'" (*id.*); (5) "solicited a case analysis from Morgan Lewis, a firm that Federal had [*sic*] paid more than $45 million from 2003 to 2009 with respect to fiduciary liability matters," (*id.* at 30); (6) deliberately failed to inform IGT "that due to the existence of conflicts between it and IGT that IGT had [a] corresponding right under the Policy to engage independent counsel in order to maintain control of the defense," (*id.*); (7) waited until November 12, 2009, when it became apparent that IGT would not accept Morgan Lewis as counsel, and a full month after communicating its duty to defend, to assert that the Securities Exclusion was potentially applicable, (*id.*); (9) implicitly threatened to apply the Exclusion if IGT failed to accept Morgan Lewis as counsel; and (10) denied coverage "based on an exclusion

it already had considered and never raised" only after "IGT did not respond and refused to accept Morgan Lewis" as defense counsel, (*id.*). These allegations lack evidentiary support and even assuming that they are true, they do not change the fact that Federal had a reasonable basis to deny coverage.

IGT's entire theory—that Federal's reliance on the previously considered Exclusion was a mere pretext for an implicit threat to change its well-established, unambiguous position on coverage and its duty to defend—is belied by, among numerous other documents, the parties' early correspondence regarding the ERISA Action. For example, contrary to IGT's reading, the October 13, 2009 email does not unambiguously "acknowledge[] Federal's duty to defend IGT." (Am. Opp'n, ECF No. 91, at 11). Instead, it notes that coverage is "potentially triggered under the [FLCS]"; explains that under the [FLCS], "Federal has the right and duty to *defend any Claim covered under this coverage section*"; and reserves the right to raise appropriate defenses to coverage under the policy and law. In letter states, in relevant part:

> Federal will be conducting an investigation and evaluation of the facts in the above Shareholder Derivative Actions and ERISA Class Actions subject to the terms and conditions of [the Policy] and a reservation of rights. At the conclusion of this review, you will be provided a written analysis of coverage.
>
> . . . In the matter of the ERISA class actions, however, please note that *coverage is potentially triggered* under the Fiduciary Liability Coverage Section of the Policy. Under the Fiduciary Liability Coverage Section, *Federal has the right and duty to defend any Claim covered under this coverage section*. We would like to discuss the retention of appropriate counsel for the ERISA Class Actions. In this regard, we are attaching a memo prepared by Morgan Lewis providing "talking points on the need for separate counsel in securities fraud and ERISA stock drop claims." Morgan Lewis will be happy to meet with you and discuss their perspective on the case and their qualifications.
>
> . . . While Federal conducts its investigation and coverage review, we reserve the right to raise appropriate defenses under the policy and law.

(Rangel Letter, October 13, 2009, ECF No. 77-3, at 2) (emphasis added). At most, this letter acknowledges that Federal would have the right and duty to defend in the event that it eventually determined that the ERISA Action was covered under the FLCS. The same is true of Federal's other emails, which, according to IGT, consistently acknowledged Federal's duty to defend.

IGT's reliance on the text of an unsent draft email is even more misleading. Specifically, IGT asserts both in its opposition and in its SAC that on November 12, 2009, Federal's claim examiner, Mr. Rangel, drafted and electronically signed a reservation of rights letter for the ERISA Action in which Federal: (1) concluded that it would provide a defense for the ERISA Action; and (2) did not reserve its rights with respect to the Securities Exclusion. (Am. Opp'n ECF No. 91, at 13–14; SAC ¶ 64, ECF No. 82, at 17). While IGT contends that "the letter is not identified as a draft" and "contain[s] Rangel's electronic signature," it is clear that it was never sent to IGT. Moreover, by comparing the draft letter to Rangel's reservation of rights letter dated September 1, 2009, which he sent to IGT in relation to an earlier, entirely separate lawsuit, it is immediately clear that Rangel used the earlier, electronically signed, letter as a template, which he began (but did not finish) modifying while drafting the November 12, 2009 document. (*Compare* Rangel Letter, Sep. 1, 2009, ECF No. 93-1, at 4 (starting with the paragraph beginning "The pleadings may be read to include . . .") *with* Rangel Draft Letter, November 12, 2009, ECF No. 87-27, at 5 (starting with the paragraph beginning "The pleadings may be read to include . . .")). Indeed, beginning on pages 4 and 5 respectively, the September 1, 2009 letter and the November 12, 2009 draft letter consist of seemingly identical text and footnotes. (*Id.*). Thus, contrary to IGT's misleading suggestion, Rangel never actually prepared or signed (much less

sent), a letter communicating that Federal would not assert the Securities Exclusion and would, in fact, defend IGT in the ERISA Action. Remarkably, IGT was well aware of the draft's true nature (i.e., that it resulted from unfinished modifications to the earlier letter) months before filing the instant opposition, having extensively questioned Mr. Rangel about the documents during his March 12, 2013 deposition. (*See* Rangel Dep., ECF No. 93-2, at 2–15).

This is not the first time that IGT has blatantly mischaracterized the evidence in this case. In its prior order, the Court strongly cautioned IGT against this sort of behavior:

> Plaintiff's entire estoppel theory appears to be premised on the assertion that Federal declined coverage without analyzing the claims and without reserving its right to assert additional defenses. This assertion is unquestionably false and obviously misleading. (*Compare, e.g.*, Pl's Opp'n , ECF No. 44, at 21 ( "Federal was given notice of the Claim but took no action apart from merely citing an exclusion in [*sic*] policy, and made no effort to determine whether any allegation in the underlying ERISA Action did or did not indicate a potential for coverage.") *with* Prentiss Letter, ECF No. 35-2 (describing, in great detail, through six pages of text, Federal's analysis of the allegations made in the ERISA Action and Federal's contractual basis, under the Securities Exclusion, for disclaiming coverage, and reserving Federal's right to assert additional defenses )). Plaintiff is strongly cautioned against making similar misrepresentations in the future.

(Order, ECF No. 79, at 11). The Court has now patiently endured IGT's efforts to manipulate the record on two occasions. It will not do so again.

With respect to the bad faith claim, IGT's unsupported allegations plainly fail to create a genuine dispute of material fact. Furthermore, and perhaps most importantly, even assuming that Federal's denial of coverage was, in fact, motivated by IGT's refusal to accept Morgan Lewis as counsel, this would not create a genuine dispute as to whether Federal had a reasonable basis for its decision in the first place. Indeed, the Court has already concluded that denying coverage under the Exclusion was reasonable, even if

incorrect in some respects. Accordingly, Federal was not without a reasonable basis for denying coverage, and it is therefore entitled to summary judgment on IGT's bad faith claim.

## CONCLUSION

IT IS HEREBY ORDERED that Federal's motion for summary judgment (ECF No. 71) is GRANTED in part and DENIED in part. It is granted as to IGT's claim for tortious breach of the implied covenant of good faith and fair dealing (claim 6) and denied as to IGT's breach of contract claims (claims 1 and 3). The breach of contract claims are IGT's only remaining causes of action in this case.

IT IS FURTHER ORDERED that Federal's motion to dismiss (ECF No. 83) is DENIED as moot.

IT IS SO ORDERED.

Dated:  This 26th day of August, 2014.

_____
ROBERT C. JONES
United States District Judge